UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | Civil Action No. 01-1537 (PLF) |
| Plaintiff, | ) | (consolidated with |
| | ) | Civil Action No. 01-1548 |
| v. | ) | Civil Action No. 01-1558 |
| | ) | Civil Action No. 01-1569 |
| GINA McCARTHY, Administrator, | ) | Civil Action No. 01-1578 |
| U.S. Environmental Protection Agency, | ) | Civil Action No. 01-1582 |
| | ) | Civil Action No. 01-1597) |
| Defendant.[1] | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Sierra Club's motion to enforce this Court's Orders of March 31, 2006 and January 20, 2011.[2] Sierra Club alleges that the Environmental Protection Agency ("EPA") has failed to promulgate emission standards for certain sources of three hazardous air pollutants as required under Section 112(c)(6) of the Clean Air Act and this Court's Order. Sierra Club asks the Court to declare that EPA has failed to undertake these nondiscretionary actions, and to establish dates certain for EPA's proposal and finalization of new standards for specified sources with respect to the three pollutants.

EPA opposes the motion, arguing that it has fulfilled its obligations under the Act and the Order, and that Sierra Club simply is dissatisfied with the substance of the standards that

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes as defendant the current EPA Administrator, Gina McCarthy, for former Administrator Lisa P. Jackson.

[2] The Court's 2011 Order reiterated the terms of Paragraph 3 of its 2006 Order, concerning EPA's obligations under Section 112(c)(6) of the Clean Air Act, but the 2011 Order extended the deadline for EPA's compliance with those terms. For simplicity, the Court will refer singularly to its "Order," although, more precisely, Sierra Club seeks to enforce both the 2006 and 2011 orders.

EPA already has established. EPA contends that such substantive review lies within the exclusive jurisdiction of the United States Court of Appeals for the District of Columbia Circuit, and that this Court therefore lacks subject matter jurisdiction to entertain Sierra Club's request for relief. Intervenor Coalition for Clean Air Implementation ("Intervenor") has filed a response in further support of EPA's opposition to Sierra Club's motion.

Upon consideration of the parties' and Intervenor's arguments, the relevant legal authorities, and pertinent portions of the record, the Court will grant Sierra Club's motion in part and deny it in part.[3]

## I. BACKGROUND

On July 16, 2001, Sierra Club filed seven different complaints against EPA under the citizen suit provision of the Clean Air Act. Sierra Club v. Johnson, 444 F. Supp. 2d 46, 51 (D.D.C. 2006). The complaints each sought relief for EPA's failure to discharge a different aspect of its regulatory duties under the Act. Id. The cases were consolidated on June 20, 2002, and then stayed while the parties sought mediation. Id. The parties engaged in settlement negotiations until early 2005, when they filed cross-motions for summary judgment. Id. EPA did not contest liability. Sierra Club v. Jackson, No. 01-1537 (PLF), 2011 WL 181097, at *3 (D.D.C. Jan. 20, 2011). Instead, EPA conceded that it had failed to promulgate standards for sources of hazardous air pollutants by the required statutory deadline of November 15, 2000, for Clean Air Act Sections 112(c)(3), 112(k)(3)(b), and 112(c)(6). Id. It is the third of these,

---

[3] The papers reviewed in connection with the pending motion include: Sierra Club's Memorandum in Support of the Motion to Enforce ("Pl.'s Mot. to Enforce") [Dkt. No. 158-1]; Sierra Club's Proposed Order ("Pl.'s Proposed Order") [Dkt. No. 158-2]; EPA's Memorandum in Opposition to Sierra Club's Motion to Enforce ("Def.'s Opp.") [Dkt. No. 166]; Intervenor's Opposition to Sierra Club's Motion to Enforce ("Intervenor's Opp.") [Dkt. No. 165]; and Sierra Club's Reply in Support of the Motion to Enforce ("Pl.'s Reply") [Dkt. No. 167].

Section 112(c)(6) — which requires EPA to "assur[e] that sources accounting for not less than 90 per centum of the aggregate emissions of [seven hazardous air pollutants] are subject to standards under subsection (d)(2) or (d)(4) of [Section 112 of the Act]" — that is the subject of Sierra Club's instant motion to enforce.[4]

On March 31, 2006, the Court issued an Order stating in relevant part that, by December 15, 2007, "EPA shall promulgate emission standards assuring that source categories accounting for not less than ninety percent of the aggregate emissions of each of the hazardous air pollutants enumerated in Section 112(c)(6) [of the Act] are subject to emission standards under Section 112(d)(2) or (d)(4)." Order at 3 (Mar. 31, 2006) [Dkt. No. 80]; see also Sierra Club v. Johnson, 444 F. Supp. 2d at 59-60 (explaining reasoning underlying the Order). From 2006 to 2010, the Court granted a number of EPA's motions to extend the deadlines of the March 31, 2006 Order, all without Sierra Club opposition. Sierra Club v. Jackson, 2011 WL 181097, at *1. In December 2010, EPA sought an extension of the deadline to April 13, 2012, but Sierra Club opposed that request. Id. In an Order issued on January 20, 2011, the Court denied EPA's request for an extension until April 13, 2012, but extended the deadline to February 21, 2011. Order at 3 (Jan. 20, 2011) [Dkt. No. 149].

In March of 2011, EPA issued a brief determination notice ("Determination") stating that it had fulfilled its duty to promulgate the emission standards required under Clean Air Act Section 112(c)(6). 76 Fed. Reg. 15308/1 (Mar. 21, 2011). In the Determination, EPA

---

[4] The seven hazardous air pollutants — or "HAPs" — specified in Section 112(c)(6) are the following: alkylated lead compounds, polycyclic organic matter, hexachlorobenzene, mercury, polychlorinated biphenyls, 2,3,7,8-tetrachlorodibenzofurans and 2,3,7,8-tetrachlorodibenzo-p-dioxin. 42 U.S.C § 7412(c)(6). As already noted and as described infra at page 6, Sierra Club maintains that EPA has yet to set standards for sources accounting for 90 percent of the aggregate emissions of three of these pollutants. The Court also notes that the references in Section 112(c)(6) to standards under subsections 112(d)(2) or 112(d)(4) implicate further requirements as to the stringency of standards for the seven enumerated HAPs. See generally Desert Citizens Against Pollution v. EPA, 699 F.3d 524, 525-28 (D.C. Cir. 2012).

3

provided a link to a docket it had established, which contains a technical memorandum. See id. (referencing Docket ID No. EPA-HQ-OAR-2004-0505 at www.regulations.gov). The memorandum describes the actions the agency has taken that, in its view, satisfy in full the requirements placed upon it by Section 112(c)(6). Id. (citing "Emission Standards for Meeting the 90 Percent Requirement Under Section 112(c)(6) of the Clean Air Act," EPA-HQ-OAR-2004-0505-0006 (Feb. 18, 2011) ("Technical Memo") [Dkt. No. 166-1]). The Technical Memo also features a table listing a number of final rules — issued as long ago as the early 1990s, and as recently as 2011 — which, according to EPA, operate in concert to fulfill its statutory duty to assure that sources of the seven HAPs specified in Section 112(c)(6) are subject to emission standards with respect to those pollutants. See Technical Memo at Appendix II; see also Def.'s Opp. at 7-8, 11 (discussing the Technical Memo). As the D.C. Circuit has explained, some of these rules cited by EPA were promulgated "in an express effort to satisfy [EPA's] § 112(c)(6) obligations," while others were issued "with no reference to § 112(c)(6)." Sierra Club v. EPA, 699 F.3d 530, 532 (D.C. Cir. 2012).

Sierra Club challenged EPA's Determination in the court of appeals, arguing first that the substance of the Determination was arbitrary and capricious, and second that the Determination was procedurally invalid for failure to comply with notice and comment requirements. Sierra Club v. EPA, 699 F.3d at 532. The Circuit held that the Determination constituted a legislative rulemaking, which requires notice and comment. Id. at 534-35. Because EPA did not adhere to the notice and comment procedural requirements, the court vacated the Determination and remanded to EPA to follow those procedures. Id. at 531, 535. The panel emphasized, however, that it did "not reach Sierra Club's arguments on the substance of the Determination or express the slightest opinion as to their merit." Id. at 534. Subsequently, EPA

4

appears to have abandoned any intention to reissue its Determination. See Pl.'s Mot. to Enforce at 12 (stating that counsel for EPA informed Sierra Club by telephone on April 17, 2013, that the agency does not intend to undertake any further action with respect to Section 112(c)(6)); see generally Def.'s Opp. (declining to refute Sierra Club's assertion on this point). As a result, Sierra Club has filed the instant motion seeking to enforce this Court's Order, which, it contends, remains unfulfilled with respect to three of the seven HAPs enumerated in Section 112(c)(6).

## II. DISCUSSION

### A. Legal Standard on a Motion to Enforce

"District courts have the authority to enforce the terms of their mandates." Flaherty v. Pritzker, No. 11-0660 (GK), 2014 WL 642658, at *2 (D.D.C. Feb. 19, 2014). "The exercise of this authority is 'particularly appropriate' when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency." Id. (quoting Int'l Ladies' Garment Workers' Union v. Donovan, 733 F.2d 920, 922 (D.C. Cir. 1984)). The Court should grant a motion to enforce if a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). But if a plaintiff "has received all relief required by that prior judgment, the motion to enforce [should be] denied." Id. Included within "a court's power to administer its decrees is the power to construe and interpret the language of the judgment." Id. at 11-12 (citing SEC v. Hermil, Inc., 838 F.2d 1151, 1153 (11th Cir. 1988)).

### B. Analysis

"[T]he Clean Air Act contains an 'unusual, bifurcated jurisdictional scheme' that divides jurisdiction between the federal district and circuit courts." Sierra Club v. Jackson, 813

F. Supp. 2d 149, 156 (D.D.C. 2011) (quoting Sierra Club v. Thomas, 828 F.2d 783, 794 (D.C. Cir. 1987)). Under the Act, a person may bring suit in district court against the EPA Administrator for an alleged failure to perform a nondiscretionary act or duty, and the district court has jurisdiction "to order the Administrator to perform such act or duty," as well as to "compel . . . agency action unreasonably delayed." 42 U.S.C. § 7604(a). By contrast, "judicial review of final action by the EPA Administrator rests exclusively in the appellate courts." Envt'l Def. v. Leavitt, 329 F. Supp. 2d 55, 63 (D.D.C. 2004) (citing 42 U.S.C. § 7607(b)(1)). Thus, whereas the substance of agency action already undertaken is reviewable only by an appropriate court of appeals, EPA's failure to take nondiscretionary action is a matter within the purview of a district court. And, "[a]s a logical matter, [the Clean Air Act's] grant of jurisdiction to the District Courts to order EPA to perform a nondiscretionary duty must presuppose the District Courts' jurisdiction to determine whether such duties have been performed in the first place." Sierra Club v. Whitman, No. 00-2206 (JMF), 2002 WL 393069, at *4 (D.D.C. Mar. 11, 2002), Report and Recommendation adopted in relevant part in Sierra Club v. Whitman, No. 00-2206 (CKK), Memo. Op. at 5-8 (D.D.C. July 10, 2002).

Sierra Club casts its motion in terms of a purported failure to act on EPA's part, arguing that the agency has not set any emission standards for one Section 112(c)(6) pollutant, hexachlorobenzene ("HCB"), and that it has set standards for two others, polychlorinated biphenyls ("PCBs") and polycyclic organic matter ("POM"), for sources that do not account for ninety percent of the aggregate emissions of these pollutants. Pl.'s Mot. to Enforce at 2. EPA counters that it already has satisfied its obligations under Section 112(c)(6) and this Court's Order. Def.'s Opp. at 10-13 (citing Technical Memo and declarations of EPA official). EPA contends that Sierra Club simply is dissatisfied with the substance of the standards that EPA has

6

issued, and that Sierra Club asks the Court to intrude into the exclusive jurisdiction of the court of appeals. Id. at 14-17. Intervenor echoes this argument, distinguishing "district court review of EPA's *failure to act* [from] review of EPA's *failure to act appropriately*," and accusing Sierra Club of seeking the latter, which is reserved to the D.C. Circuit. Intervenor Opp. at 7.

This Court, in its 2006 Order and Opinion, acknowledged the limits of its jurisdiction in the context of Sierra Club's challenge. While the Court clearly had — and has — the authority to order EPA to promulgate emission standards assuring compliance with the 90 percent emission requirements of Section 112(c)(6) by a date certain, "it is beyond this Court's authority to tell EPA *how* (as opposed to when) it must fulfill its duties under Section 112(c)(6)." Sierra Club v. Johnson, 444 F. Supp. 2d at 59-60; see also Sierra Club v. Jackson, 2011 WL 181097, at *7 (quoting Sierra Club v. Browner, 130 F. Supp. 2d 78, 90 (D.D.C. 2001)).

But as the D.C. Circuit emphasized in its recent decision, EPA had "assured [this Court] that [EPA's issuance of the Determination], like any other final agency action, would be subject to review in [the court of appeals]." Sierra Club v. EPA, 699 F.3d at 532. This Court's 2006 Order was premised on that assurance. See Sierra Club v. Johnson, 444 F. Supp. 2d at 59-60. As the court of appeals now has explained, however, EPA's issuance of the Determination with no opportunity for notice and comment failed to honor the terms of its representations to this Court, upon which the Order was based. Sierra Club v. EPA, 699 F.3d at 534-35. The court therefore vacated the Determination and stated that "[its] vacatur will *require* EPA, *consistent with the district court's deadline order*, to entertain and respond to [Sierra Club's] claims about the necessary scope and stringency of the standards." Id. at 533 (emphases added). In other words, because this Court's Order remains unfulfilled, EPA therefore *must* initiate a process of notice and comment rulemaking before it either reissues its Determination or

7

takes other appropriate action after considering the comments submitted.[5]  And it falls to this Court — which still holds jurisdiction to compel EPA to act — to enforce the terms of this mandate.

EPA maintains that the terms of this Court's Order — that the agency "shall promulgate emission standards" assuring regulation of 90 percent of the aggregate emissions of Section 112(c)(6) HAPs — have been satisfied by EPA's issuance of numerous rules over the past two decades, some specifically linked to the Section 112(c)(6) pollutants and others silent as to them, but all of which "effectively (even if indirectly) control the relevant [HAPs]." Def.'s Opp. at 16; see also Technical Memo. EPA further contends that this Court in 2006 did not actually order the agency to issue the Determination notice; in EPA's view, it "voluntarily published" the Determination. Def.'s Opp. at 6-7. As the decision of the court of appeals demonstrates, however, EPA's position does not represent a fair reading of this Court's Order and Opinion. See Sierra Club v. EPA, 699 F.3d at 534 (noting that "in the deadline suit before the district court, EPA based its successful response on the premise that [the] Determination *would both issue and be a final agency action* reviewable in [the D.C. Circuit]" (emphasis added)). In order for the court of appeals to review the substantive validity of EPA's Determination — which is not a simple announcement, but is, rather, an action from which "legal consequences will flow," id. — the Determination must be put forth in a manner "that will render EPA's legal and technical decisions more transparent and thereby facilitate substantive review." Id.; see also id. at 535 ("Because the Determination manifests a new yet final agency position on [EPA's] compliance with § 112(c)(6), it is a legislative rulemaking subject to

---

[5] As Sierra Club correctly points out, see Pl.'s Reply at 12, the court of appeals' conclusion on this point was essential to its holding that the asserted procedural injury was redressable, thus giving Sierra Club standing to bring its petition for review. See Sierra Club v. EPA, 699 F.3d at 533.

8

[5 U.S.C.] § 553's notice-and-comment requirements."); Int'l Union, United Mine Workers of America v. Mine Safety & Health Admin., 407 F.3d 1250, 1259 (D.C. Cir. 2005) (describing the purposes of notice and comment, which include providing "affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review").

The Court therefore concludes that its Order remains unsatisfied. That Order obligated EPA to take action by a date certain to ensure its compliance with Section 112(c)(6), in a manner reviewable by the court of appeals. EPA elected to do so by articulating its substantive legal and technical decisions in the Determination. But as the D.C. Circuit has held, EPA's issuance of that Determination was procedurally invalid. Sierra Club v. EPA, 699 F.3d at 534-35. In accordance with the court of appeals' vacatur of EPA's Determination and its "remand to EPA to fulfill [] notice-and-comment requirements," id. at 535 — as well as the Circuit's view as to the continuing effect of this Court's deadline Order — the Court directs EPA to initiate a process of notice and comment rulemaking before it reissues or, after consideration of the comments submitted, reconsiders or modifies its Determination. Any such final action must include a statement explaining its basis, and EPA also must respond to the comments that it receives. See id. at 533 (stating that EPA must "entertain and respond" to Sierra Club's claims concerning the alleged inadequacy of the regulation of Section 112(c)(6) HAPs); see also Louisiana Federal Land Bank Ass'n, FLCA v. Farm Credit Admin., 336 F.3d 1075, 1079 (D.C. Cir. 2003) (noting that "an agency must respond to those 'comments which, if true, . . . would require a change in [the] proposed rule'" (quoting American Mining Congress v. EPA, 907 F.2d 1179, 1188 (D.C. Cir. 1990)) (omission and alteration in original)).[6]

---

[6] The Court recognizes that this directive does not afford Sierra Club the full relief that it seeks. See Pl.'s Proposed Order. But this Court previously declined to craft a remedy that

9

Because neither party has yet had the opportunity to express a view on an appropriate schedule for the notice and comment process that EPA must initiate, the Court will further direct the parties to meet and confer in an effort to agree upon such a schedule. In the event that EPA and Sierra Club are unable to reach an agreement, the Court will set a schedule after receiving the views of the parties.

III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Sierra Club's Motion to Enforce [Dkt. No. 158] is GRANTED IN PART and DENIED IN PART; it is

DECLARED that EPA has failed to comply with this Court's 2006 Order [Dkt. No. 80], as amended by this Court's 2011 Order [Dkt. No. 149]; it is

FURTHER ORDERED that EPA shall initiate a process of notice and comment rulemaking before its reissues, reconsiders, or modifies its Determination; it is

FURTHER ORDERED that the parties shall meet and confer in an effort to agree upon a schedule for EPA's initiation and completion of this process; and it is

FURTHER ORDERED that on or before August 15, 2014, the parties shall file a joint status report informing the Court of any such agreement, or, if no agreement is reached, proposing a schedule for briefing on the question of an appropriate timeline for EPA's actions.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: July 25, 2014   United States District Judge

---

would dictate to EPA the precise manner in which to satisfy its duties under Section 112(c)(6), see Sierra Club v. Johnson, 444 F. Supp. 2d at 59-60, and it again declines to do so.